UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTINE ILONA FRANCIS,

        Plaintiff,

v.                            CASE NO. 3:10-cv-1030-J-34JBT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits ("DIB"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Court recommends that the Commissioner's decision be **AFFIRMED.**

## I.    Issues on Appeal and Summary of Decision

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") adequately considered the effect of Plaintiff's medications on her ability to work; (2) whether the ALJ's Residual Functional Capacity ("RFC")

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

assessment is supported by substantial evidence; and (3) whether the ALJ properly evaluated the opinion evidence of record. (Doc. 13.) Because the Court finds that the ALJ's decision is supported by substantial evidence with respect to all three issues and the ALJ applied the correct legal standards, the Court will recommend that the ALJ's decision be affirmed.

## II. Procedural History and Summary of the ALJ's Decision

On January 24, 2007, Plaintiff filed an application for a Period of Disability and DIB, alleging she became disabled on March 31, 2006. (Tr. 118-22, 144, 148.) The Social Security Administration ("SSA") denied her application initially and upon reconsideration. (Tr. 55-62, 73-78.) Plaintiff then requested and received a hearing before the ALJ on September 17, 2009, during which she was represented by an attorney. (Tr. 12-53, 68, 79, 81-84, 88-91, 95-106.) Plaintiff and Robert Bradley, a vocational expert ("VE"), appeared and testified at the hearing. (Tr. 35-52.)

On October 26, 2009, the ALJ issued his decision, finding Plaintiff not disabled and denying her claim. (Tr. 12-34.) The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. (Tr. 20.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 31, 2006, the alleged onset date. (*Id.*) At step two, the ALJ determined that Plaintiff had "the following severe impairments: degenerative disc disease; history of hypertension; obesity; adjustment disorder; [and] post concussion syndrome." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an

impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ then determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) that is unskilled." (Tr. 22.) The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the RFC] assessment." (Tr. 24.) The ALJ stated that although "radiographic studies demonstrate some degenerative disc disease of the cervical and lumbar spine, the claimant is still functioning well with a normal gait, and no annotation of any motor, sensory, or reflex deficits." (Tr. 26.) The ALJ also observed:

> The record documents significant gaps in the claimant's history of treatment. Without regular doctor visits, there is evidence that there have been periods of time since the alleged onset date during which the claimant has either not maintained a steady supply of medications, or has not required the ongoing use of medications for her pain, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

(*Id.*) The ALJ also found that Plaintiff's complaints that her "medications adversely affected her ability to function" were not corroborated by the medical records. (*Id.*)

Next, at step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (Tr. 32.) The ALJ then found that considering Plaintiff's age of forty-five on the alleged disability onset date, Plaintiff was "a younger individual" under 20 C.F.R. § 404.1563, but "subsequently changed age category to closely approaching advanced age." (*Id*.) The ALJ stated that Plaintiff had at least

a high school education and was able to communicate in English.  (*Id.*)

At step five, considering Plaintiff's age, education, work experience, and RFC, and relying on the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.21 and 202.14, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.*)  The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from March 31, 2006 through October 26, 2009.  (Tr. 33.)

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on September 8, 2010.  (Tr. 1-6.)  Accordingly, the ALJ's October 26, 2009 decision is the final decision of the Commissioner.  On November 9, 2010, Plaintiff timely filed her Complaint in this Court.  (Doc. 1.)

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137,

146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the

court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Analysis

### A. The ALJ Adequately Evaluated the Effect of Plaintiff's Medications on Her Ability to Work

Plaintiff contends that the ALJ failed to make "a finding regarding the effect of [Plaintiff's] prescribed medications on her ability to work" as required by 20 C.F.R. § 404.1529(c)(3)(iv) and 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(I)(1) & 12.00(G). (Doc. 13 at 2, 12.) The Court disagrees, and holds that the ALJ's findings about the side effects and effectiveness of Plaintiff's medications are supported by substantial evidence.

Under the Commissioner's regulations, one of the factors relevant to a social security disability claimant's symptoms that the Commissioner "will consider [is] . . . [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate [her] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). If the claimant is treated for musculoskeletal disorders, the medical treatment "must be considered in terms of its effectiveness in ameliorating the signs, symptoms, and laboratory abnormalities of the disorder, and in terms of any side effects that may further limit the individual." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(I)(1). If the claimant is treated for mental disorders, the Commissioner "must give attention to the effects of medication on [the claimant's]

6

symptoms, signs, and ability to function."  20 C.F.R. Part 404, Subpart P, Appendix

1, 12.00(G).  Further:

> Drugs used in the treatment of some mental illnesses may cause drowsiness, blunted effect, or other side effects involving other body systems. [The Commissioner] will consider such side effects when [he] evaluate[s] the overall severity of [the claimant's] impairment.  Where adverse effects of medications contribute to the impairment severity and the impairment(s) neither meets nor is equivalent in severity to any listing but is nonetheless severe, [the Commissioner] will consider such adverse effects in the RFC assessment.

*Id.*

However, when a claimant's complaints of side effects are not reflected in the

records of the claimant's treating and examining physicians, the Eleventh Circuit has

recognized that an ALJ's determination that side effects did not present a significant

problem was supported by substantial evidence.  *See Swindle v. Sullivan*, 914 F.2d

222, 226 (11th Cir. 1990) (per curiam) (finding that "[t]he ALJ's determination that

side effects from medication did not present a significant problem is . . . supported

by substantial evidence" where the claimant only complained of headaches from one

medication and "the record did not disclose any concerns about side effects by the

several doctors who examined and treated her").  *See also Colon ex rel. Colon v.

Comm'r of Soc. Sec.*, 411 Fed. App'x 236, 238 (11th Cir. Jan. 25, 2011) (per curiam)

(citing *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985)) (holding that

where a claimant, who is represented by an attorney, raises a question about the

side effects of her medications, but "does not otherwise allege that the side effects

contribute to the alleged disability, . . . the ALJ does not err in failing 'to inquire

further into possible side effects,'" particularly where none of the claimant's doctors report any side effects from the medications and the claimant "did not complain to them of any side effects").[2]

In the present case, the ALJ stated:

> The claimant stated she took medication for her symptoms which made it hard to wake up at the beginning of a day and made her mouth dry. She reported that she did not take her medication the day of the hearing because if she had, she would not have been able to function. She stated that she had tried injections, water therapy and chiropractic care to relieve her symptoms. The claimant reported that most days she is "worn out" in less than an hour and spends her time going between a recliner and her bed. . . .
> The claimant testified that medications adversely affected her ability to function; however, the medical records, such as office treatment notes, do not corroborate those allegations.

(Tr. 23-24, 26.)

The ALJ's above-cited finding is supported by substantial evidence. Although Plaintiff cites to a treatment note, dated December 9, 2006, from one of her treating physicians, Reynaldo P. Lazaro, M.D., which indicates that Plaintiff experienced nausea and dyspepsia from taking Zoloft, the same note shows that Dr. Lazaro told Plaintiff to stop taking the medication. (Doc. 13 at 13; Tr. 717.) Moreover, at the hearing Plaintiff did not testify to any such side effects. (*See* Tr. 46-47.) Plaintiff

---

[2] Plaintiff cites to the Eleventh Circuit's decision in *Cowart v. Schweiker*, where the court held that the ALJ "failed in his duty to develop the record fully because he neither elicited testimony nor made any findings regarding the effect of [the plaintiff's] prescribed medications upon her ability to work." 662 F.2d 731, 737 (11th Cir. 1981). However, unlike the plaintiff in *Cowart*, who was not represented by counsel, Plaintiff in this case was represented by an attorney during the hearing before the ALJ and this distinction has been recognized by the Eleventh Circuit in subsequent decisions. *See Colon*, 411 Fed. App'x at 238; *Cherry*, 760 F.2d at 1191 n.7.

does not cite to, and the Court has not found, any other medical records that corroborate her allegations regarding the side effects of her medications. In the absence of such records and in light of the ALJ's rejection of the asserted severity of Plaintiff's complaints for lack of credibility, as discussed *infra*, the ALJ's finding regarding the alleged side effects of Plaintiff's medications is supported by substantial evidence.

Plaintiff also argues that the ALJ did not consider the alleged ineffectiveness of her pain medication, or, in other words, the effects of her allegedly unrelieved pain on her ability to work. (Doc. 13 at 14.) The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

The ALJ must consider all of a claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the

ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P. "If the ALJ decides not to credit [claimant's pain] testimony, he must articulate explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223.

The ALJ properly evaluated Plaintiff's complaints of pain, including the alleged ineffectiveness of Plaintiff's medications on her ability to work. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 24.) However, the ALJ rejected Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" as "not fully persuasive" given the medical evidence of record and the findings of the State agency. (Tr. 24, 31.)

The ALJ articulated explicit and adequate reasons for rejecting Plaintiff's credibility regarding her allegedly unrelieved pain, and his reasons are supported by substantial evidence. For example, the ALJ noted that there were significant gaps in Plaintiff's treatment, which led him to conclude that at times Plaintiff did not require medications. (Tr. 26.) Plaintiff's admission that she "hardly takes" her Hydrocodone, prescribed on an as-needed basis (Tr. 392, 395), supports the ALJ's conclusions and undermines Plaintiff's argument that her other pain medications were ineffective. *See, e.g.*, *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x 287, 289 (11th Cir. 2009) (per curiam) (finding that the ALJ properly discounted the plaintiff's subjective complaints of pain because, *inter alia*, "despite [plaintiff's] numerous visits for back

10

pain, [plaintiff] regularly stopped taking his pain medication for months at a time").

Moreover, there is other record evidence that Plaintiff's pain medications were at least somewhat effective. (*See* Tr. 309 (indicating that Plaintiff's pain was "made better by Lortab and Motrin"), 724 ("Her response to Lortab and Flexeril is favorable."); *see also* Tr. 297, 349, 351, 354, and 357 (indicating that Plaintiff's pain was sometimes alleviated by other forms of treatment, such as chiropractic care)). In addition, the fact that Plaintiff did complain of some side effects with her pain medications, but continued to take them, supports the conclusion that they provided some relief. For instance, when asked about the side effects of her medications at the hearing, Plaintiff testified:

> Well, the amitriptyline puts you to sleep, but you can't wake up the next day. It's like you have to take something to either wake up, or drink a lot of coffee. But you're kind of like out of it for the beginning part of the day. You have like a cotton mouth. You're really kind of out of it. And until it lets you wake up, there's nothing you can do about it.

(Tr. 46-47.) In conclusion, the ALJ adequately considered the effectiveness of Plaintiff's medications on her ability to work and his reasons are supported by substantial evidence.

## B. The ALJ's RFC Assessment Is Supported by Substantial Evidence

Plaintiff next argues that "the ALJ's RFC assessment and finding of non-disability are not based on all of [Plaintiff's] impairments and limitations." (Doc. 13 at 16.) Specifically, Plaintiff claims that the ALJ did not properly consider her

limitations in concentration, persistence, or pace; sitting, standing, and walking due to her alleged pain; and completing a normal workday/workweek.  (*Id.* at 16-19.)

In support of her argument that the ALJ failed to properly consider her limitations on standing, walking, and sitting, Plaintiff merely cites portions of the record indicating that Plaintiff was in pain at various times.  (*Id.* at 17.)  However, the Court has already determined that the ALJ adequately considered Plaintiff's allegations of pain.  Moreover, because a light-work restriction by definition includes a six-hour limitation on walking and standing, the ALJ was not required to explicitly include a six-hour limitation on walking and standing into his determination of Plaintiff's RFC.  *See* SSR 83-10; *see also Freeman v. Barnhart*, 220 Fed. App'x 957, 960 (11th Cir. Mar. 23, 2007) (per curiam); *Lathan v. Astrue*, 2010 WL 3895918, at *7-8 (M.D. Fla. Sept. 30, 2010).

Plaintiff further argues that the ALJ did not properly consider her limitations in concentration, persistence, or pace as required by *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011).  (Doc. 13 at 18.)  In *Winschel*, the Eleventh Circuit held that moderate limitations in concentration, persistence, and pace must be considered in assessing a claimant's RFC.  631 F.3d at 1180-81. However, the court also held that if the medical evidence demonstrates that the claimant "can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," the ALJ properly accounts for these limitations if he includes unskilled work in his RFC assessment.  *Id.* at 1180.

Here, as part of his evaluation of Plaintiff's mental impairments, *see* 20 C.F.R. § 404.1520a, the ALJ assessed moderate limitations in Plaintiff's concentration, persistence, or pace, and then found that Plaintiff had the RFC to perform light work that is unskilled.  (Tr. 21-22.)  There was substantial medical evidence to support the ALJ's finding that Plaintiff could perform unskilled work despite her moderate limitations in concentration, persistence, or pace.  For instance, the consultative examiner Mary Ann Moore, Psy.D., opined that Plaintiff "can follow and understand simple directions and instructions, perform simple rote tasks, and states she can consistently perform simple tasks."  (Tr. 317-18.)[3]

In addition, the Mental RFC Assessment completed by the reviewing consultant Steven Wise, Psy.D., provides that Plaintiff "appears mentally capable of at least simple routine tasks," she "can understand and remember basic tasks," and she "can carry out simple tasks."  (Tr. 467.)  Similarly, another reviewing psychologist, Dr. Graff, indicated in his Psychiatric Review Technique, dated April 30, 2007, that while Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace (Tr. 331, 341), she was nevertheless "[c]apable of performing simple tasks in a low demand setting" (Tr. 343).  Therefore, the ALJ's finding that Plaintiff could engage in unskilled work is supported by substantial medical evidence.

---

[3] As discussed *infra* Section IV.C., the ALJ gave only limited weight to Dr. Moore's opinions to the extent they were vague in defining Plaintiff's restrictions.

With respect to Plaintiff's ability to complete a normal workday and workweek, Plaintiff appears to argue that the ALJ erred when he accorded "little weight" to the opinion of one of her treating physicians, Maria Deinzer Lifrak, Ph.D. (Doc. 13 at 17.) Dr. Lifrak opined that Plaintiff was markedly limited in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 30, 368.) However, as discussed *infra* Section IV.C., the ALJ's evaluation of Dr. Lifrak's opinions is supported by substantial evidence.[4]

Plaintiff further argues that in light of her non-exertional impairments, the ALJ erred by relying solely on the Grids and needed the testimony of a VE to determine that a significant number of jobs exist in the national economy that Plaintiff could perform. (Doc. 13 at 18-19.) For the following reasons, the Court finds no error.

"Exclusive reliance on the [G]rids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (citing *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added)). The Eleventh Circuit "has interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a *wide* range' of work at a given work level." *Phillips*, 357 F.3d at

---

[4] The ALJ's consideration of the opinions of Dr. Graff and Dr. Moore is further analyzed *infra* Section IV.C.

1243. Thus:

> [W]hen both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam).

Here, despite Plaintiff's non-exertional limitations, the ALJ did not err by relying solely on the Grids because he made a specific finding that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled light work." (Tr. 33.) The case of *Clifton v. Astrue*, 298 Fed. App'x 855 (11th Cir. Oct. 30, 2008) (per curiam), appears to be precisely on point. In that case, the Eleventh Circuit affirmed the ALJ's decision to rely on the Grids when the claimant had the ability "to perform a full range of light work," but was limited to "unskilled work," just as Plaintiff is here. *Id.* at 857. The Eleventh Circuit accepted that a limitation to unskilled work is not "severe enough to preclude a wide range of employment" at the level of light work. *Sryock*, 764 F.2d at 836. Plaintiff cites no authority to the contrary. Thus, the ALJ did not need to elicit testimony from the VE regarding whether a significant number of jobs exists in the national economy for someone with Plaintiff's limitations.

### C. The ALJ Properly Evaluated the Opinion Evidence of

Finally, Plaintiff argues the ALJ did not apply the correct legal standards to the opinion evidence because his reasons for rejecting certain evidence are not explicit or adequate, are contradictory, and are not supported by substantial evidence. (Doc. 13 at 19-23.)

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.*

A treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ may reject a treating physician's opinion if there is good cause to do so. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has concluded "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

_____

[5] Although the Court has reviewed the entire record, the discussion herein is limited to the opinion evidence cited by Plaintiff.

physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41 (citation omitted). "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate the reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

### 1. The Opinions of Plaintiff's Treating Physicians

### a. Ralph J. Zwolinski, M.D.

Dr. Zwolinski conducted a neurological evaluation of Plaintiff on June 30, 2008 when Plaintiff presented with chief complaints of back and neck pain. (Tr. 363-64.) Plaintiff was to return for a follow-up visit in one month. (Tr. 364.) However, there is only one other progress note from Dr. Zwolinski and/or his physician's assistant in the record, which is dated October 6, 2008. (Tr. 470.) During that visit, Dr. Zwolinski noted that Plaintiff's examination was essentially normal, except "some decreased grip strength at 4+/5." (*Id.*) His progress note indicates that Plaintiff needed to follow up in three months and that he "filled out some paperwork that [Plaintiff] needs for disability today." (*Id.*) It appears that Dr. Zwolinski was referring to the Physical RFC Assessment he dated October 16, 2008. (*See* Tr. 373-80.)[6] It also appears Plaintiff never again followed up with Dr. Zwolinski.

In his assessment, Dr. Zwoliski opined, *inter alia*, that Plaintiff can sit for less

---

[6] Because there is no other paperwork in the record from Dr. Zwolinski, it seems that the Physical RFC Assessment was actually completed on October 6, 2008, rather than on October 16, 2008.

than two hours in an eight-hour workday; "must periodically alternate sitting and standing to relieve pain or discomfort"; should never climb, kneel, crouch, and crawl; and should avoid even moderate exposure to extreme heat, noise, fumes, etc. (*Id.*) He opined that Plaintiff's symptoms were consistent with her MRI results. (Tr. 378.)

The ALJ gave "very limited weight" to Dr. Zwolinski's opinion. (Tr. 30.) The ALJ stated:

> On October 16, 2008, Dr. Zwolinski completed a [RFC] Assessment and reported the claimant was unable to perform the requirements of even sedentary exertional work activities. While Dr. Zwolinski is a treating physician of the claimant, that treatment was very limited, with only one other documented visit prior to the date this assessment was completed. Dr. Zwolinski apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. The objective clinical findings reported in Dr. Zwolinski's progress notes, with only slightly diminished grip strength of 4+/5 being the only deficit noted, do not support the level of functional limitation described in his assessment.

(*Id.* (internal citations omitted).)

The ALJ had good cause to reject the opinion of Dr. Zwolinski on the grounds that his treatment of Plaintiff was limited, he relied substantially on Plaintiff's subjective complaints, his opinions were not supported by his clinical findings, and thus, his opinions were inconsistent with his own records. The Court finds substantial support for the conclusion that the objective clinical findings contained in the doctor's progress notes do not support the level of functional limitation assessed in his RFC. Further, to the extent the limitations he assessed on Plaintiff's functional abilities were based on Plaintiff's subjective complaints of pain, those

18

complaints were properly discredited by the ALJ. *See, e.g.*, *Duncan v. Astrue*, 2010 WL 3292806, at *9 (M.D. Fla. Aug. 19, 2010) (finding the ALJ properly discounted a medical opinion "because it was based on the Plaintiff's subjective reports, which the ALJ found lacked credibility"). Moreover, because Dr. Zwolinski saw Plaintiff on only two occasions, his opinion was entitled to less weight than if he had seen Plaintiff enough to obtain "a longitudinal picture" of her impairments. *See* 20 C.F.R. § 404.1527(d)(2)(i).

### b. Maria Deinzer Lifrak, Ph.D.

In August 2006, Dr. Lifrak performed a neuropsychological evaluation of Plaintiff, which indicated, in relevant part, that Plaintiff was "functioning in the normal range of measured memory skills" and had "mild difficulty with visual attention and concentration." (Tr. 477-78, 482.) Dr. Lifrak diagnosed Plaintiff with post concussion syndrome, cognitive symptoms consistent with head trauma, posttraumatic stress disorder, and assessed a GAF score of 59 (moderate symptoms). (Tr. 483.) She recommended individual psychotherapy and individual cognitive rehabilitation. (*Id.*) This was the only time Dr. Lifrak saw Plaintiff.

Over two years later, on September 3, 2008, Dr. Lifrak completed a Mental RFC Assessment of Plaintiff. (Tr. 367-69.) In the assessment, she opined that Plaintiff was markedly limited in the ability to complete a normal workday and workweek and moderately limited in a number of abilities.

The ALJ gave "little weight" to Dr. Lifrak's opinions. (Tr. 30.) The ALJ noted

that Dr. Lifrak's "assessment was provided more than two years after Dr. Lifrak's only documented visit with the claimant, in August 2006, for which Dr. Lifrak assessed a GAF score of 59, indicating only borderline mild to moderate symptoms." (*Id.*)  Thus, the ALJ found that "Dr. Lifrak's opinion of a marked limitation in the one area of sustained concentration and persistence is not supported by [her] own evaluation report or by the other substantial evidence of record."  (*Id.*)

The ALJ also had good cause to give little weight to Dr. Lifrak's opinions. First, as a one-time examiner, Dr. Lifrak's opinions are not entitled to great weight. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (finding that the opinion of a one-time examining doctor is not entitled to great weight).  Moreover, Dr. Lifrak's assessment was completed over two years after her only evaluation of Plaintiff. Further, Dr. Lifrak's assessed functional limitations are not consistent with the findings in her neuropsychological evaluation, including the GAF score (Tr. 27, 30). *See Poellnitz v. Astrue*, 349 Fed. App'x 500, 503 (11th Cir. Oct. 21, 2009) (per curiam) (rejecting an examining doctor's assessment of marked and extreme mental limitations as inconsistent with, *inter alia*, his own report, which assigned a GAF score of 55, and the claimant's daily activities).  Thus, the ALJ had good cause to discount Dr. Lifrak's opinions.

### c.   Physical RFC Assessment Attributed to Reynaldo Lazaro, M.D.

Plaintiff contends that Dr. Lazaro opined that she could perform less than

sedentary work.  (Doc. 13 at 20.)  Apparently, Plaintiff is attributing the opinions expressed in an unsigned and undated Physical RFC Assessment to Dr. Lazaro. (*See* Tr. 736-40.)  The ALJ gave "no weight" to the subject RFC assessment because it was "incomplete with missing pages, as well as undated and unsigned." (Tr. 30.)  The ALJ was not required to give any weight to an undated, unsigned assessment.  *See Felipa v. Astrue*, 2011 WL 4529772, *4 (E.D. Penn. Aug. 31, 2011) (finding that the ALJ properly gave no weight to an unsigned and undated report submitted by an unidentified individual).  *See also* 20 C.F.R. § 404.1519o(e) ("All consultative examination examination reports will be personally reviewed and signed by the medical source who actually performed the examination."); *Terry v. Astrue*, 580 F.3d 471, 475-76 (7th Cir. 2009) (per curiam).  Plaintiff cites no authority to support the proposition that the ALJ was required to give this report any weight. Therefore, the ALJ did not err in giving the subject assessment "no weight."

### 2.  The Opinions of the Consultative Examiner Mary Ann Moore, Psy.D.

On April 4, 2007, Dr. Moore completed a psychiatric evaluation of Plaintiff and provided a medical source statement ("MSS").  (Tr. 315-20.)  The MSS states:

> The claimant can follow and understand simple directions and instructions, perform simple rote tasks, and states she can consistently perform simple tasks.  She did show difficulty with attention, concentration, and memory.  She has the ability to learn simplistic tasks, but currently may have difficulty with complex tasks.  Ms. Francis appears to be having difficulty dealing with stress.  A stressful work situation *may be overwhelming* for her, both due to her depression and anxiety, as well as difficulties in regard to cognitive processing.  She is

withdrawn from others, which *could cause problems with relating with coworkers and the public*. In addition, her depression, anxiety, and decrease in cognitive functioning *may cause problems with making appropriate work decisions, maintaining a regular work schedule*.

Results of the exam appear to be consistent with psychiatric and cognitive problems, and *may significantly interfere with the claimant's ability to function on a daily basis*.

(Tr. 318-19 (emphasis added).)

The ALJ gave "only limited weight" to Dr. Moore's opinion because it was "quite vague in defining the extent of restrictions the claimant would have in functional abilities." (Tr. 29.) Nevertheless, the ALJ agreed with Dr. Moore's opinions to the extent she indicated that Plaintiff retained "the ability to perform simple work tasks." (*Id.*) The Court agrees that a number of Dr. Moore's opinions were vague, and also couched in such speculative language as to be entitled only to limited weight.

Given that Dr. Moore was a one-time consultative examiner and the ALJ articulated valid reasons for according her opinions only limited weight, the Court finds no error. *See, e.g.*, *Gibson*, 779 F.2d at 623 (finding that the opinion of a one-time examining doctor is not entitled to great weight); 20 C.F.R. § 404.1527(d)(2). Dr. Moore's opinion was limited to possibilities that certain work situations "may be overwhelming" or "could cause problems" for Plaintiff, or "may significantly interfere with [her] ability to function on a daily basis." (Tr. 318-19.) Because these opinions are inconclusive and do not define the extent of restrictions on Plaintiff's functional

abilities, the ALJ could properly discount them. *See Riley v. Massanari*, 139 F. Supp. 2d 1293, 1299 (M.D. Ala. 2001) (finding that the ALJ did not err in questioning or discrediting a medical opinion of a one-time examiner that did not define the extent of restrictions on the plaintiff's ability to function).

### 3.    The Non-Examining Consultants' Opinions

Plaintiff asserts that although the ALJ gave "some weight" to the opinions of the state agency consultants, these opinions were in many ways consistent with the opinions rejected by the ALJ.  (Doc. 13 at 22.)  Plaintiff argues that "[t]he ALJ's failure to state wheat [sic] weight he gave to the medical opinions that support [Plaintiff's] claim violates the leal [sic] standards set forth in [*Sims v. Apfel*, 530 U.S. 103 (2000), *Sharfarz*, 825 F.2d at 279, and *Winschel*, 631 F.3d at 1180]." (*Id.*)

However, as required by *Winschel* and *Sharfarz*, the ALJ stated with particularity the weight given to different medical opinions and the reasons therefor. *See Winschel*, 631 F.3d at 1179; *Sharfarz*, 825 F.2d at 279.  Although the ALJ did not address the opinions of each non-examining consultant separately, the ALJ stated that he was according these opinions "some weight," and he explained his reasons for doing so.  He also specifically cited the portions of the record where these opinions could be found.  (*See* Tr. 31 (citing to Tr. 321-34, 341-44, 451-68).) Although the ALJ could have engaged in a more extensive discussion of the details of these opinions, he was not required to do so.  The Court is satisfied that it can engage in meaningful review of the ALJ's decision based on his analysis.  *See*

23

*Winschel*, 631 F.3d at 1179.

Moreover, the Court is satisfied that the ALJ engaged in a rational analysis of the opinions of the state agency physicians. For example, Plaintiff points out that Dr. Graff stated in her summary conclusions that Plaintiff had a number of moderate limitations on her abilities. (Tr. 331, 341-42.) However, this assessment also provides, *inter alia*, that "based on the objective evidence, the claimant is able to . . . execute responsibilities associated [with] the work environment, accept criticism from authority, and cope [with] change [with] no more than mild to moderate interference from psych-related symptoms. Capable of performing simple tasks in a low demand setting." (Tr. 343.) Thus, Dr. Graff's overall opinions provide substantial evidence for the ALJ's decision.

Similarly, in his summary conclusions, Dr. Wise opined that Plaintiff was moderately limited in the ability to complete a normal workday and workweek and to set realistic goals or make plans independently of others. (Tr. 466.) However, he also opined that Plaintiff was not significantly limited in a number of areas, and that she appeared "mentally capable of at least simple routine tasks." (Tr. 467.) Thus, Dr. Wise's overall opinions also support the ALJ's RFC determination.

## V. Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review;

rather, the Court's review is limited to determining whether the ALJ's findings are based on appropriate legal standards and are supported by substantial evidence. Based on these standards, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is due to be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The Commissioner's decision be **AFFIRMED**.

2.      The Clerk of Court be **DIRECTED** to close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on November 16, 2011.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record